UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMES V. CARIDDI,                    )
                     Plaintiff       )
                                     )
                                     )
                                     )
            v.                       )    Civil Action No. 05-30111-MAP
                                     )
                                     )
                                     )
CONSOLIDATED ALUMINUM CORP.,         )
                     Defendant       )


REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANT'S MOTION TO DISMISS (Document No. 4)
September 26, 2005

NEIMAN, U.S.M.J.

        In this case, James V. Cariddi ("Plaintiff") seeks reimbursement of his

environmental cleanup costs from the former owner of his property, Consolidated

Aluminum Corp. ("Defendant").  Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant has

moved to dismiss that part of Plaintiff's complaint which purports to arise under the

Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), 42 U.S.C. § 9601 *et seq.*, arguing that the claim is not cognizable as a

matter of law.  *See Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29

(1st Cir. 2004) (complaint may be dismissed pursuant to Rule 12(b)(6) "if no well-

pleaded set of facts supports recovery")  (citing, *inter alia*, *Conley v. Gibson*, 355 U.S.

41, 45-46 (1957)).

        Defendant's motion to dismiss has been referred to this court for a report and

recommendation.  *See* 28 U.S.C. § 636(b)(1)(B).  For the reasons provided below, the court concludes that Plaintiff's CERCLA claim is viable and recommends that Defendant's motion be denied.

## I. BACKGROUND

Most of the following allegations come directly from Plaintiff's complaint and are stated in a light most favorable to him.  *See Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992).  To give a complete picture, however, the court has also considered documents attached to the complaint.  *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (noting that such documents may be properly considered on a Rule 12(b)(6) motion).

Plaintiff owns property in North Adams, Massachusetts, which he uses as a warehouse and office for a wholesale toy distribution business.  (Complaint ¶¶ 5, 13.) Plaintiff purchased the property in 1976 from Defendant which, in turn, had purchased it from another company.  (*Id.* ¶¶ 10-12.)  As early as 1959 -- and until Defendant moved from the premises in 1976 -- Defendant and/or its predecessors used the property for drawing and fabricating aluminum tubing.  (See *id.* ¶¶ 7, 10-11.)  For many decades, until approximately 2004, another company also leased part of the property to anodize the tubing made by Defendant and/or its predecessors.  (*Id.* ¶¶ 8, 9, 13.)

During Defendant's occupation of the premises from 1961 to 1976, the aluminum drawing performed at the property "involved oil splashing . . . or dripping onto the floor" as well as "occasions when oil-filled hoses burst, spraying oil all over the work area." (*Id.* ¶ 17.)  Defendant's "routine maintenance" of the premises also included the use of

squeegees to sweep waste oil into the basement floor.  (*Id.* ¶ 18.)  Plaintiff's business, in contrast, neither uses significant amounts of oil nor has suffered any oil spills, leaks or releases.  (*Id.* ¶ 19.)

In April of 2001, local fire officials notified the Massachusetts Department of Environmental Protection ("DEP") about contamination on the property.  (*Id.* ¶¶ 20-21.)  DEP, in turn, sent Plaintiff a Notice of Responsibility which specified necessary cleanup actions.  (*Id.* ¶ 23.)  Plaintiff thereafter began to remedy the contamination and instituted this action.  He claims to have spent over $75,000 to date on cleanup and expects to incur greater costs in the future.  (*Id.* ¶¶ 24-29, 31-32.)  He has not, however, been sued by the government or any other entity.

In his three-count action, Plaintiff seeks relief from Defendant for "past and future response costs incurred to assess and cleanup releases of contaminated waste oil and other hazardous substances at and near the Property."  (*Id.* ¶¶ 43, 50, 54.)  Count I seeks recovery from Defendant of Plaintiff's costs under CERCLA.  Count II seeks similar recovery under Mass. Gen. L. ch. 21E.  Count III requests a declaratory judgment under 28 U.S.C. § 2201 *et seq.* for future response costs.

## II. DISCUSSION

Defendant has moved to dismiss Count I, Plaintiff's request for cost recovery under CERCLA.  According to Defendant, CERCLA does not grant Plaintiff the right to pursue such a cause of action because he has not himself been sued.  As described below, the court disagrees with Defendant's reading of the law and, therefore, will recommend that the motion be denied.

A.

Congress enacted CERCLA in 1980 to empower the Environmental Protection Agency ("EPA") to clean up hazardous waste sites and sue polluters to recover the costs. *See* H.R. Rep. No. 96-1016, pt. I, at 18 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6119, 6120. The EPA can proceed against alleged polluters under 42 U.S.C. § 9606 ("section 106")[1] and 42 U.S.C. § 9607(a) ("section 107(a)").[2]

---

[1] In pertinent part, section 106 provides as follows:

(a) **Maintenance, jurisdiction, etc.** In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require. The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

(b) **Fines; reimbursement** (1) Any person who, without sufficient cause, willfully violates, or fails or refuses to comply with, any order of the President under subsection (a) of this section may, in an action brought in the appropriate United States district court to enforce such order, be fined not more than $25,000 for each day in which such violation occurs or such failure to comply continues.

42 U.S.C. § 9606(a), (b).

[2] In pertinent part, section 107(a) provides as follows:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

4

In 1986, the Superfund Amendments and Reauthorization Act ("SARA")
amended CERCLA in order to allow private parties who had been sued under either
section 106 or 107(a) to sue others for contribution under 42 U.S.C. § 9613(f) ("section
113(f)").[3]  *See* H.R. Rep. No. 99-253, pt. III, at 15 (1986), *reprinted in* 1986

---

(3) any person who by contract, agreement, or otherwise arranged for
disposal or treatment, or arranged with a transporter for transport for
disposal or treatment, of hazardous substances owned or possessed by
such person, by any other party or entity, at any facility or incineration vessel
owned or operated by another party or entity and containing such hazardous
substances, and

(4) any person who accepts or accepted any hazardous substances for
transport to disposal or treatment facilities, incineration vessels or sites
selected by such person, from which there is a release, or a threatened
release which causes the incurrence of response costs, of a hazardous
substance, shall be liable for–

> (A) all costs of removal or remedial action incurred by the United
> States Government or a State or an Indian tribe not inconsistent with
> the national contingency plan; [and]

> (B) any other necessary costs of response incurred by any other
> person consistent with the national contingency plan[.]

42 U.S.C. § 9607(a).

[3]  In pertinent part, section 113(f) provides as follows:

(1) **Contribution**  Any person may seek contribution from any other person
who is liable or potentially liable under section 9607(a) of this title, during or
following any civil action under section 9606 of this title or under section
9607(a) of this title. Such claims shall be brought in accordance with this
section and the Federal Rules of Civil Procedure, and shall be governed by
Federal law. In resolving contribution claims, the court may allocate
response costs among liable parties using such equitable factors as the
court determines are appropriate.  Nothing in this subsection shall diminish
the right of any person to bring an action for contribution in the absence of
a civil action under section 9606 of this title or section 9607 of this title.

U.S.C.C.A.N. 2835, 3038.  Even as amended by SARA, however, CERCLA does not explicitly provide an avenue for private parties who have *not* been sued to seek contribution from other potentially responsible parties.  The Supreme Court recently discussed this legislative gap in *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 125 S.Ct. 577, 543 (2004), and both parties invoke that decision.

Defendant contends that, in light of *Cooper*, Plaintiff may not maintain this action under either section 107(a) or 113(f).  Defendant first argues that, pursuant to *Cooper*, landowners may sue others under section 113(f), but "only 'during or following any civil action under Section 106 or 107(a).'" *Cooper* at 543 (citing section 113(f)(1)).  Since Plaintiff is neither in the midst of nor at the end of such an action, Defendant continues, he cannot proceed under section 113(f).  Second, Defendant argues that "only an innocent party, usually the government," may sue under section 107(a) and that Plaintiff is not an innocent party.  (Defendant's Brief at 3.)

For his part, Plaintiff concedes that *Cooper* bars him from proceeding under

---

(2) **Settlement**  A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.  Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

(3) **Persons not party to settlement** . . . (B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

42 U.S.C. § 9613(f).

section 113(f).  He also acknowledges with respect to section 107(a) that, as the

current landowner, he is a potentially responsible party ("PRP"), *see* 42 U.S.C. §

9607(a)(1)-(4), and, thus, not presumed innocent.  Plaintiff argues, however, that

*Cooper*, combined with other authority, allows PRPs such as he, who are ineligible to

proceed under section 113(f), to nonetheless sue for *implied* contribution under section

107(a).  The court finds Plaintiff's position more persuasive.

B.

In *Cooper*, the plaintiff, the purchaser of a business property, brought a CERCLA

action against the defendant-seller seeking contribution for environmental cleanup

expenditures that the plaintiff undertook voluntarily after the sale.  *Id.*, 125 S.Ct. at 582-

83.  The Court held that the plaintiff could not proceed against the seller under section

113(f) because it had not first been sued in a CERCLA administrative or cost recovery

action.  *Id.* at 583-84.  That holding, Plaintiff concedes here, prevents him from

proceeding under section 113(f).

The majority in *Cooper*, however, declined to address the second question at

issue in the case at bar, namely, whether PRPs such as Plaintiff who are ineligible to

proceed under section 113(f) may nonetheless seek implied contribution under section

107(a).  *See id.* 584-86.  Absent specific guidance from the Supreme Court or the First

Circuit, this court believes that at least three reasons compel it to recognize such a

right of action and, as a result, to allow Plaintiff to proceed under section 107(a).

1.

First, the language of section 107(a) itself suggests an expansive remedy.  As

7

the *Cooper* majority recognized, statutory wording is crucial because "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Id.* at 584 (citation omitted). Since "CERCLA is essentially a remedial statute designed by Congress to protect and preserve public health and the environment," the court believes it is "obligated to construe its provisions liberally." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986). With those standards in mind, this court suggests that section 107(a) supports an action for implied contribution.

As indicated, subsection (4)(A) of section 107(a) provides for cost recovery for the government, while subsection (4)(B) covers "any other necessary costs of response incurred by any other person." 42 U.S.C. § 9607(a)(4)(B). Given the statutory canon that courts "must, if possible, construe a statute to give every word some operative effect," *Cooper*, 125 S.Ct. at 583, subsection (4)(B) would appear to necessarily refer to the costs of non-governmental parties. Moreover, by using the broadest possible language, *i.e.*, *any* costs incurred by *any* other person, subsection (4)(B) does not appear to limit who may sue under section 107(a). This reading of section 107(a) is supported by the First Circuit's analysis in *In re Hemingway Transp., Inc.*, 993 F.2d 915, 931 (1st Cir. 1993) (holding that section 107(a) "is available to 'any person' who incurs necessary response costs, presumably without regard to whether the plaintiff is an EPA target, *i.e.*, a PRP"). *But see* William Bradford Reynolds and Lisa K. Hsiao, *The Right of Contribution Under CERCLA After* Cooper Indus. v. Aviall Servs., 18 Tul. Envtl. L.J. 339, 346-47 (2005) (contending that "other person" might specifically refer to

persons other than those listed in subsections (1)-(4)).

Interestingly enough, section 113(f), although not available here, also supports a broad reading of section 107(a). Section 113(f) never specifies that it provides the sole contribution remedy. *See Bethlehem Iron Works, Inc. v. Lewis Indus., Inc.*, 891 F. Supp. 221, 225 (E.D. Pa. 1995). Instead, section 113(f)'s savings clause provides that "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section [106] or section [107]." 42 U.S.C. § 9613(f)(1). According to the majority in *Cooper*, this savings clause "rebuts any presumption that the express right of contribution [in section 113(f)] . . . is the exclusive cause of action for contribution available for a PRP." *Cooper*, 125 S.Ct. at 584.

### 2.

Second, SARA's legislative history indicates that Congress intended to preserve implied contribution even after codifying the express contribution provisions in section 113(f). *See Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 352 (6th Cir. 1998). The House of Representatives' report accompanying SARA cites with approval cases that upheld implied contribution, explaining that section 113(f) "clarifies and confirms the right of a person held jointly and severally liable under [sections 106 or 107 of] CERCLA to seek contribution from other" PRPs. H.R. Rep. 99-253, pt. V, at 79 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2861. Implied contribution also fulfills the same purposes cited in the House report for express contribution, *i.e.*, to "encourage private party settlements and cleanups." *Id.* at 80. *See also id.*, pt. III, at

9

18-19, *reprinted in* 1986 U.S.C.C.A.N. 3038, 3041 (section 113 "clarifies the availability

of judicial review regarding contribution claims"); S. Rep. No. 99-11, at 43 (1985) (bill

"clarifies and conforms existing law by adding contribution provision").[4]

3.

Third, the Supreme Court itself, along with a number of lower court decisions,

appears to have supported the expansive view of section 107(a) which Plaintiff seeks

here.  In 1994, the Court stated that CERCLA "expressly authorizes a cause of action

for contribution in § 113 *and impliedly authorizes a similar and somewhat overlapping*

*remedy in § 107.*"  *Key Tronic Corp. v. United States*, 511 809, 816 (1994) (emphasis

added).  Granted, ten years later in *Cooper*, a majority of the Court referred to this

statement in *Key Tronic* as "*dictum*" and opined that the earlier case "did not address

the relevance, if any, of [the plaintiff]'s status as a PRP or confront the relationship

between §§ 107 and 113."  *Cooper*, 125 S.Ct. at 585.  Significantly, however, the

majority in *Cooper* did not overrule *Key Tronic*.  Instead, the Court, as described, simply

"declin[ed] to address the issue" of whether "in the alternative to an action for

contribution under § 113(f)(1), [a plaintiff] may recover costs under § 107(a)(4)(B) even

though it is a PRP."  *Id.* at 584.  For their part, the dissenters had no doubt that such an

implied right existed.  *See id.* at 586-88 (Ginsburg, J., dissenting).

While there has been no post-*Cooper* guidance from the Supreme Court or the

---

[4]  It should be mentioned as well that the legislative history never cites any
restrictions on who may use section 107(a).  Thus, while Congress obviously intended
that the primary user of section 107(a) would be the EPA, it did not bar others from
proceeding thereunder.  *See* H.R. Rep. No. 99-253, pt. III, at 15, *reprinted in* 1986
U.S.C.C.A.N. 2835, 3038.

10

First Circuit Court of Appeals (let alone from any district court within the circuit), this court believes that the *Cooper* dissenters, in the end, will be proven correct. As described, CERCLA's language and legislative history support an implied contribution right under section 107(a). Moreover, *Cooper*'s limitation on section 113(f) clarifies this result. Without an implied contribution right, PRPs in Plaintiff's position, *i.e.*, those not having yet been sued, would be without a remedy, a result not contemplated by either the language of CERCLA or its legislative history.

The court also believes that the First Circuit's pre-*Cooper* decision in *United Technologies Corp. v. Browning-Ferris Indus.*, 33 F.3d 96 (1st Cir. 1994), lends support to Plaintiff's position. There, the First Circuit was asked to decide whether a CERCLA lawsuit was either a section 107(a) cost recovery action or a section 113(f) contribution action, the two actions having different limitations periods. *See id.*, 33 F.3d at 98. The First Circuit held that the particular action at issue was best construed as a section 113(f) contribution action and, hence, subject to a shorter proscriptive period. *See id.* at 99-100. In so holding, however, the court commented, albeit as *dictum*, that "[i]t is possible that . . . a PRP who spontaneously initiates a cleanup without governmental prodding might be able to pursue an implied right of action for contribution under [section 107(a)]." *Id.* at 99 n.8. In doing so, the court cited *Key Tronic* and *In re Hemingway*, pre-*Cooper* decisions, as supporting such a view. *Id.* In other words, the First Circuit has at least suggested that such an implied right of action exists.[5]

---

[5] That certainly is how other courts have interpreted *United Technologies. See, e.g., Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301 (9th Cir. 1997) (citing *United Technologies*, *inter alia*, for the proposition that "most courts" prior to *Key*

Other courts of appeal, pre-*Cooper*, also suggested that a section 107(a) implied right of contribution was available to a landowner "who spontaneously initiates a cleanup without governmental prodding." *Id. See Pinal Creek*, 118 F.3d at 1301 (holding that contribution claim is "implicitly . . . imbedded in the text of § 107"); *Rumpke*, 107 F.3d at 1241 ("We conclude that landowners who allege that they did not pollute the site in any way may sue for their direct response costs under § 107(a). To the extent this looks like an implied claim for contribution, where the landowner is alleging that his share should be zero, we note that *dicta* in [*Key Tronic*] suggests that the Court was not disturbed by that possibility."). The Second Circuit was a notable exception. *See Bedford Affiliates v. Sills*, 156 F.3d 416, 424 (2nd Cir. 1998) (holding, pre-*Cooper*, that PRPs may only attempt to proceed under section 113(f), not section 107(a)). *See also Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R.*, 142 F.3d 769, 776 (4th Cir. 1998) (similar).

Perhaps more importantly, a number of courts, post-*Cooper*, have allowed PRPs to seek implied contribution under section 107(a) in circumstances similar to those present here. *See, e.g.*, *Metropolitan Water Reclamation Dist. v. Lake River Corp.*, 365 F. Supp.2d 913, 917 (N.D. Ill. 2005) (holding that landowner who initiates voluntarily cleanup "cannot seek contribution under § 113(f)(1)," but does maintain "an implied right to contribution under § 107(a)"); *Vine St. LLC v. Keeling*, 362 F. Supp.2d 754, 762-

---

*Tronic* had held "that § 107 implicitly incorporates a claim for contribution"); *Rumpke of Indiana, Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1240 (7th Cir. 1997) (noting that in *United Technologies* the First Circuit, like other courts, "acknowledged that a class of cases might remain in which a PRP might sue under § 107(a)").

63 (E.D. Tex. 2005) (PRP "that voluntarily works with a government agency to remedy environmentally contaminated property should not have to wait to be sued to recover cleanup costs since Section 113(f)(1) is not meant to be the only way to recover"); *Viacom, Inc. v. United States*, No. Civ. A. 05-0468(ESH), 2005 WL 1902849, at *3 (D.D.C. July 19, 2005) ("[I]n light of [*Cooper*], a PRP that cannot sue for voluntary cleanup costs under § 113(f) may still seek to recover its costs in a § 107(a) proceeding."); *Kotrous v. Goss-Jewett Co.*, No. Civ. S02-1520 FCD JFM, 2005 WL 1417152, at *3 (E.D. Cal. Jun 16, 2005) (applying *Pinal Creek* and holding that plaintiff could seek implied contribution under section 107(a)).  In essence, these courts "agree with the dissenters in [*Cooper*], insofar as they express[ed] a prediction of the result that would occur when the Court had to decide the question[:] that if the implied right existed before § 113(f)(1) was added and the right was not encompassed by § 113(f)(1), then it must still lie in § 107(a)."  *Metropolitan Water*, 365 F. Supp.2d at 918.

    Granted, other district courts, particularly within the Second Circuit, have concluded, often reluctantly, that their particular circuits' pre-*Cooper* decisions prevented them from recognizing an implied right of contribution under section 107(a). *See, e.g.*, *Cadlerock Props. Joint Venture v. Schilberg*, No. 3:01CV896 (MRK), 2005 WL 1683494, at *9 (D. Conn. Jul 19, 2005) ("*Bedford Affiliates* completely forecloses any and all implied contribution claim that [the plaintiff] may have."); *Benderson Dev. Co. v. Neumade Prods. Corp.*, No. 98-CV-02415R, 2005 WL 1397013, at *11 (W.D.N.Y. June 13, 2005) ("It is this court's opinion that *Bedford Affiliates* remains controlling precedent in this circuit.").  *See also Mercury Mall Assocs., Inc. v. Nick's*

13

*Mkt.,* 368 F. Supp.2d 513, 519 (E.D. Va. 2005) (declining to find an implied right to

contribution given Fourth Circuit precedent, although deeming such precedent, after

*Cooper*, to be "quixotic").  However, the Second Circuit, at least, may be changing its

mind.  In May, it remanded a case to the district court to determine, "in the first

instance," whether "*Bedford Affiliates* remains viable after *Cooper.*"  *Syms v. Olin Corp.*,

408 F.3d 95, 107 (2nd Cir. 2005).  In doing so, the Second Circuit noted that "[t]he

combination of *Cooper Industries* and *Bedford Affiliates*, if the latter remains unaltered,

would create a perverse incentive for PRPs to wait until they are sued before incurring

response costs."  *Id.* at 106 n.8.

Of course, this court is not bound by the Second Circuit's limiting precedent in

*Bedford Affiliates*, no matter its present quandary.  Rather, this court believes that

CERCLA's language and legislative history -- combined with *Key Tronic*, the majority

and dissenting opinions in *Cooper*, the First Circuit's statements in *United*

*Technologies*, and other pre- and post-*Cooper* case law -- support the view that an

implied right of contribution under section 107(a) exists for landowners, such as

Plaintiff, who voluntarily initiate cleanup prior to being sued themselves.  Accordingly,

the court suggests that Plaintiff's CERCLA claim ought not be dismissed.

III. CONCLUSION

For the reasons stated, the court recommends that Defendant's motion to

dismiss be DENIED.[6]

---

[6]  The parties are advised that under the provisions of Rule 3(b) of the Rules for
United States Magistrates in the United States District Court for the District of
Massachusetts, any party who objects to these findings and recommendations must file

DATED:   September 26, 2005

                                            /s/   Kenneth P. Neiman
                                          KENNETH P. NEIMAN
                                          U.S. Magistrate Judge

_____

a written objection with the Clerk of this Court **within ten (10) days** of the party's
receipt of this Report and Recommendation.  The written objection must specifically
identify the portion of the proposed findings or recommendations to which objection is
made and the basis for such objection.  The parties are further advised that failure to
comply with this rule shall preclude further appellate review by the Court of Appeals of
the District Court order entered pursuant to this Report and Recommendation.  *See
Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988);
*United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702
F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir.
1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See
also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another
party's objections within ten (10) days after being served with a copy thereof.