UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30111-MAP

|  |  |
|---|---|
| JAMES V. CARIDDI,<br>        Plaintiff<br><br>v.<br><br>CONSOLIDATED ALUMINUM CORPORATION,<br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Pursuant to the provisions of Rule 3(c) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, plaintiff, James V. Cariddi ("Cariddi"), submits the following memorandum in response to the objection of defendant, Consolidated Aluminum Corporation ("Conalco"), to the Magistrate Judge's Report and Recommendation with Regard to Defendant's Motion to Dismiss of September 26, 2005 ("Report and Recommendation").

    **I.**     **The Magistrate Judge Correctly Denied Defendant's Motion to Dismiss**

Conalco's motion to dismiss contends that Cariddi is without a right of action against Conalco under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* Last December, in Cooper Industries, Inc. v. Aviall Services, Inc., 125 S.Ct. 577 (2004), the Supreme Court ruled that 42 U.S.C. § 9613(f) ("§ 113(f)" of CERCLA) can only be utilized to seek contribution "during or following any civil action under section 9606 of this title or under section 9607(a) of this title." Cooper Industries, 125 S.Ct. at 583 (quoting 42 U.S.C. § 9613(f)(1)). It is undisputed that Cariddi does not meet the

conditions for bringing suit under § 113(f) as he has not been sued under either 42 U.S.C. § 9606 ("§ 106") or 42 U.S.C. § 107(a) ("§ 107(a)"). In addition to providing a right of contribution under § 113(f), CERCLA provides for the recovery of response costs under § 107(a). The issue before this Court is whether Cariddi may sue Conalco under § 107(a). Because Magistrate Judge Neiman correctly interpreted the language and legislative history of CERCLA to conclude that Cariddi may sue Conalco under § 107(a), the Court should adopt the Magistrate Judge's Report and Recommendation.

      A.  <u>Section 107(a) Does Not Preclude Suits by Potentially Responsible Parties ("PRPs")</u>

The Magistrate Judge observed that § 107(a)(4)(B) provides for the recovery of "any other necessary costs of response incurred by any other person consistent with the national contingency plan." See Report and Recommendation at 8. The First Circuit has stated that "a private right of action for CERCLA response costs under section 9607(a)(4)(B) is available to 'any person' who incurs necessary response costs, presumably without regard to whether the plaintiff is an EPA target, i.e., a PRP or 'covered person' under section 9607(a)." <u>In re Hemingway Transp., Inc.</u>, 993 F.2d 915, 931 (1st Cir. 1993), cert. denied, 510 U.S. 914, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993). Furthermore, as the Magistrate Judge noted, the later amendment of CERCLA with the Superfund Amendments and Reauthorization Act ("SARA"), which provided the contribution rights under § 113(f), comports with this interpretation as "[n]othing in this subsection[, § 113(f),] shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title." 42 U.S.C. § 9613(f)(1). The Magistrate Judge also canvassed pertinent testimony in

the legislative history showing that members of the House of Representatives understood § 107 to provide a right of contribution.  See Report and Recommendation at 9.

Conalco offers a different reading of CERCLA for the Court's consideration, one which the Magistrate Judge addressed and rejected, see Report and Recommendation at 8-9, namely that the term "other persons" in § 107(a)(4)(b) does not take its plain-English meaning, but rather serves to incorporate by exclusion the definitions of the four categories of covered parties identified in § 107(a)(1)-(4).  Not only does this reading contravene In re Hemingway, Inc., 993 F.2d at 931, it requires the kind of tortured linguistic exercise that, at the very least, demands overwhelmingly clear legislative history and/or policy considerations in its favor.  But Conalco offers no legislative history to support its reading.  And as the Second Circuit explained for a second time on September 9, 2005, the pressing policy considerations prompted by the Supreme Court's holding in Cooper lead to the plain-English reading of § 107 recommended by the Magistrate Judge:

> [W]e believe we would be impermissibly discouraging voluntary cleanup were we to read section 107(a) to preclude parties that, if sued, would be held liable under section 107(a) from recovering necessary response costs.  Were this economic disincentive in place, such parties would likely wait until they are sued to commence cleaning up any site for which they are not exclusively responsible because of their inability to be reimbursed for cleanup expenditures in the absence of a suit.  See Syms v. Olin Corp., 408 F.3d 95, 106 n.8 (2d Cir. 2005) (observing that "the combination of Cooper Industries and Bedford Affiliates . . . would create a perverse incentive for PRPs to wait until they are sued before incurring response costs").  This would undercut one of CERCLA's main goals, "'encouraging private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others.'"  Key Tronic Corp. v. United States, 511 U.S. 809, 819 n.13, 128 L. Ed. 2d 797, 114 S. Ct. 1960 (1994) (quoting FMC Corp. v. Aero Indus., Inc., 998 F.2d 842, 847 (1993)).

Consolidated Edison Co. of New York v. UGI Utilities, Inc., 2005 U.S. App. LEXIS 19477, *25 (2d Cir. Sept. 9, 2005)(notes omitted); see also Syms v. Olin Corp., 408 F.3d 95, 106 n.8 (2d Cir. 2005).  Conalco has nothing to say about these policy concerns and even fails to cite the Second

3

Circuit's much-awaited decision in Consolidated Edison Co. Moreover, the First Circuit has already explained that "in the event the private-action plaintiff itself is potentially 'liable' to the EPA for response costs and thus is akin to a joint 'tortfeasor,' section 9607(a)(4)(B) serves as the pre-enforcement analog to the 'impleader' contribution action permitted under section 9613(f)." In re Hemingway, Inc., 993 F.2d at 931 (citing 42 U.S.C. § 9613(f)).

> B. Conalco Misunderstands the Import of "Implied Rights of Contribution" Doctrine

The Court should not be confused by Conalco's treatment of the topic of "implied rights of contribution." To begin with, the Supreme Court in Cooper did not hold that any right of action under § 107(a) available on remand to respondent Aviall Services, Inc.—and by analogy to Cariddi—would necessarily be an "implied right of contribution." Much to the contrary, the Court recognized that Aviall Services, Inc. might choose to reframe its claim against Cooper Industries, Inc. as *either* an "implied right of contribution" *or* a "right of cost recovery." Cooper, 125 S.Ct. at 586. Nevertheless, the Second Circuit's analysis in Consolidated Edison Co. suggests that this distinction could be without much difference:

> Some might argue that a person who, if sued, would be partly liable for necessary costs of response may be unjustly enriched if allowed under section 107(a) to recover 100 percent of its costs from other persons. This fear seems misplaced. While we express no opinion as to the efficacy of such a procedure, there appears to be no bar precluding a person sued under section 107(a) from bringing a counterclaim under section 113(f)(1) for offsetting contribution against the plaintiff volunteer who, if sued, would be liable under section 107(a). See, e.g., Blasland, Bouck & Lee v. City of N. Miami, 283 F.3d 1286, 1292 (11th Cir. 2002) (observing that plaintiff, an engineering firm, had sued City asserting CERCLA claims, and City had counterclaimed for CERCLA contribution); Dent v. Beazer Materials & Servs., 156 F.3d 523, 527 (4th Cir. 1998) (stating that the plaintiff had filed claims under section 107(a) and section 113(f)(1), and that the defendant had filed "generally corresponding CERCLA counterclaims"); Redwing Carriers v. Saraland Apts., 94 F.3d 1489, 1495 (11th Cir. 1996) (stating that the plaintiff had sued the defendants under sections 107(a) and 113(f), and the defendants had counterclaimed under section 113(f)).

4

Consolidated Edison Co., 2005 U.S. App. LEXIS 19477, *24 n.9.  Thus, an action asserting the right of cost recovery under § 107(a) can functionally become a contribution-like claim as the assertion of a counterclaim under § 113(f) against the plaintiff, assuming both claims are successful, will allow a court to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate."  42 U.S.C. § 9613(f)(1).

In Northwest Airlines v. Transport Workers, 451 U.S. 77 (1981), one of the leading cases addressing "implied rights of contribution," the Supreme Court explained that "[t]he ultimate question in cases [that would require the implication of a right of action] is whether Congress intended to create the private remedy—for example, a right to contribution—that the plaintiff seeks to invoke."  Id. at 91.  That § 107(a) creates a private right of action for cost recovery is plain and settled.  Should this Court determine that Cariddi's CERCLA claim can, contrary to the Second Circuit's view, only stand as an implied right of contribution, the only question is whether "the language of the statute[] indicates that [it was] enacted for the special benefit of a class of which [Cariddi] is a member."  Id.  The Court should answer that question resoundingly in the affirmative: "Section 107(a) makes its cost recovery remedy available, in quite simple language, to any person that has incurred necessary costs of response, and nowhere does the plain language of section 107(a) require that the party seeking necessary costs of response be innocent of wrongdoing."  Consolidated Edison Co., 2005 U.S. App. LEXIS 19477, *24; see also In re Hemingway Transp., Inc., 993 F.2d at 931.  Congress provided a right of action for all persons who incur necessary response costs, and the Magistrate Judge correctly found that the plain text of the statute provides no basis from which to exclude a landowner like Cariddi from access to that right.

5

C. <u>United Technologies Corp.</u> Does Not Stand in the Way of the Report and Recommendation

Conalco's reliance upon <u>United Technologies Corp. v. Browning-Ferris Industries, Inc.</u>, 33 F.3d 96 (1st Cir. 1994), must be taken with the necessary grain of salt. Firstly, <u>United Technologies Corp.</u>'s binding holding concerns the applicability of limitations periods under 42 U.S.C. 9613(g) to a party sued by the Environmental Protection Agency. Secondly, the <u>United Technologies Corp.</u> Court explicitly recognized that "a PRP who spontaneously initiates clean-up without governmental prodding might be able to pursue an implied right of action for contribution under [§ 107]." <u>Id.</u> at 99 n. 8. Most importantly, however, that opinion, as discussed in Plaintiff's Opposition to Defendant's Motion to Dismiss, was among the string of circuit opinions that the Supreme Court indicated required its fresh consideration. See <u>Cooper</u>, 125 S.Ct. at 585. Leading that string cite was the Second Circuit's <u>Bedford Affiliates v. Sills</u>, 156 F.3d 416 (2d Cir. 1998). The Second Circuit was also the first to have the opportunity to comment on the impact of <u>Cooper</u> on its precedent, called into question by the Supreme Court:

> Together, <u>Cooper Industries</u> and <u>Bedford Affiliates</u>, [which held that that a plaintiff who is also a PRP may not bring a cost recovery action under § 107(a) and is instead limited to suing for contribution under § 113(f),] leave a PRP with no mechanism for recovering response costs until proceedings are brought against the PRP. This might discourage PRPs from voluntarily initiating clean-up, contrary to CERCLA's stated purpose of "induc[ing] such persons voluntarily to pursue appropriate environmental response actions with respect to inactive hazardous waste sites." H.R. Rep. No. 96-1016(I), at 17 (1980), reprinted in 1980 U.S.C.C.A.N. 6119, 6120. This is because if a PRP remediates a facility on its own initiative, it reduces the likelihood that it will be sued under § 106 or § 107(a), and thereby jeopardizes its opportunity to seek contribution under § 113(f) from other PRPs. The combination of <u>Cooper Industries</u> and <u>Bedford Affiliates</u>, if the latter remains unaltered, would create a perverse incentive for PRPs to wait until they are sued before incurring response costs.

<u>Syms v. Olin Corp.</u>, 408 F.3d 95, 106 n.8 (2d Cir. 2005). The First Circuit has observed that because "CERCLA is essentially a remedial statute designed by Congress to protect and preserve

6

public health and the environment," "[courts are] therefore obligated to construe its provisions liberally to avoid frustration of the beneficial legislative purposes." <u>Dedham Water Co. v. Cumberland Farms Dairy, Inc.</u>, 805 F.2d 1074, 1081 (1st Cir. 1986). The unwelcome incentives and unfortunate environmental impact that would follow from foreclosing a right of action under § 107(a) from PRPs who voluntarily commence clean-up only serves to confirm what the plain language of the statute should make clear of its own force: § 107(a)(4)(B) provides for the recovery of "any other necessary costs of response incurred by <u>any other person</u> consistent with the national contingency plan." (emphasis added).

## **CONCLUSION**

The Court should overrule Conalco's objection and adopt the Magistrate Judge's Report and Recommendation because it correctly concludes that Cariddi has a right of action under § 107(a) of CERCLA against Conalco.

Dated:  October 19, 2005

/s/ Christopher B. Myhrum
Christopher B. Myhrum, Esq.
 BBO#  365980
Gastón de los Reyes
 BBO# 662200
Bulkley, Richardson and Gelinas, LLP
1500 Main Street
Suite 2700
Springfield, MA  01115-5507
Tel:  (413) 781-2820