UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-cv-30111-MAP

| | |
|---|---|
| James V. Cariddi, | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| Consolidated Aluminum Corporation, | ) |
|     Defendant | ) |

**<u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN
SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

**I.    INTRODUCTION**

Defendant, Consolidated Aluminum Corporation ("Conlaco"), has moved the Court for summary judgment on all three counts of the Complaint of Plaintiff, James V. Cariddi ("Cariddi"). Cariddi opposes Conalco's motion as to all three counts: Count I (Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA")); Count II (Mass. Gen. Laws c. 21E ("Chapter 21E")); and Count III (Declaratory Judgment). In addition, Cariddi cross-moves the Court for summary judgment as to Counts II and III. Cariddi's position, therefore, as articulated below, is that he is entitled to (1) trial on his CERCLA claim; (2) judgment as a matter of law on his Chapter 21E claim; and (3) a declaration that Conalco is liable for Cariddi's response costs under Chapter 21E.

**II.    STATEMENT OF MATERIAL FACTS OF RECORD**

Cariddi currently owns improved real estate formerly owned and operated by Conalco located at 506-508 State Road, North Adams, Massachusetts (the "Property"). Complaint at ¶ 5,

Answer at ¶ 5.  During its ownership of and manufacturing operations at the Property, Conalco's primary activity was drawing of aluminum tubing down to smaller diameters, which required the use of large quantities of drawing oil to lubricate dies.    Statement of Norman Lappies at ¶¶ 3, 5, 8 and 11 ("Lappies Statement"), Exhibit A to Affidavit of Christopher B. Myhrum, Esquire ("Myhrum Affidavit").  Norman Lappies worked for Conalco at the Property.  Deposition of Norman R. Lappies at 12-15 ("Lappies Deposition"), Exhibit B to Myhrum Affidavit.  The aluminum tubing operations at the Property were messy and involved releases of drawing oil from routine operations and when hoses burst spewing oil.  Lappies Statement at ¶ 11; Lappies Deposition at 73.  There were releases of oil to the wooden floor of the work area, as well as to the earth floor or to the concrete block room, either directly, or indirectly as released oil dripped through holes in the wooden floor.  Lappies Statement at ¶ 11; Lappies Deposition at 152.  The basement was full of lakes of oil.  Lappies Deposition at 145.

  During Conalco's ownership and operation of the Property, Conalco employees performed "cleanup" of work areas by disposing of waste oil to the basement area below the work area.  Lappies Statement at ¶¶ 12-15; Lappies Deposition at 169-87.  Mr. Lappies observed the application of mineral spirits solvents and the use of squeegees to dispose to the earth floor or concrete block room beneath the work area waste oil that had accumulated in the work area due to the continuous build up on the floor from the releases of oil from aluminum tubing drawing operations.  Lappies Statement at ¶ 12, Lappies Deposition at 180, 182-184.

  Samples of soil collected from the area where Conalco released and disposed of oil and waste oil contain hazardous substances and hazardous materials.  Answers to Interrogatories 15 and 16 in Plaintiff's Responses to Defendant's First Set of Interrogatories ("Defendant's Interrogatories"), Exhibit B to Affidavit of Robert D. Cox, Esquire ("Cox Affidavit").

Cariddi through legal counsel sent letters to Conalco and Conalco's legal counsel pursuant to M.G.L. c. 21E, §4A to inform Conalco of Cariddi's intent to seek damages and reimbursement for Cariddi's response costs related to the assessment and remediation of conditions at 506-508 State Road, North Adams, Massachusetts (the "Property"). Complaint at ¶¶ 33, 35 and Exhibits B and D to Complaint (May 13, 2002 and February 5, 2004 letters from Cariddi to Conalco). In response to Cariddi's initial Section 4A letter, Conalco responded that, "it must be shown that CAC [Conalco] caused the release of oil in order for it to be liable under [Chapter 21E] §5(a)(5)." Exhibit C to Complaint (June 10, 2002 letter from Conalco to Cariddi). When Cariddi in a second Section 4A letter, Exhibit D to Complaint, provided Conalco with a copy of the Lappies Statement, showing Conalco had caused a release of oil at the Property (and after Conalco took the deposition of Mr. Lappies confirming that Conalco released oil and disposed of waste oil at the Property), Conalco responded that proof of causation was insufficient unless Conalco breached a duty sufficient to satisfy a negligence standard. Exhibit E to Complaint (October 29, 2004 letter of Conalco to Cariddi).

Because Conalco continued to refuse to participate as a responsible party in the assessment and cleanup of the Property, Cariddi commenced this litigation to recover response costs and for declaration of Conalco's liability for response costs Cariddi has incurred and will incur in the future to perform response actions to address the releases at the Property, including assessment and cleanup of contamination caused by Conalco's operations.

### III.    ARGUMENT

In moving for summary judgment, Conalco attempts to convince the Court to eviscerate Chapter 21E by requiring a showing of duty and breach of duty in a case where it is undisputed that Conalco caused releases of oil and waste oil at the Property. To adopt Conalco's proffered

3

interpretation of Chapter 21E, §5(a)(5), the Court must ignore the language of the statute, the decisions of the Massachusetts Supreme Judicial Court and the First Circuit Court of Appeals, and the familiar rule of statutory construction requiring liberal application of Chapter 21E to accomplish its remedial purposes. To deny Conalco's summary judgment motion and to allow Cariddi's cross-motion, the Court need only apply settled law.

Because there is no genuine issue of material fact that Conalco released waste oil at the Property and that it is a liable party under § 5(a)(2) of Chapter 21E, the Court has a second, independent and sufficient basis for denying Conalco's summary judgment motion and allowing Cariddi's cross-motion. Finally, Conalco has failed to exclude the possibility that the oily waste released at the Property is not subject to CERCLA's petroleum exception, and the Court should deny Conalco's summary judgment motion as to Cariddi's CERCLA claim.

**A. Conalco's Interpretation of Chapter 21E is Untenable and Cariddi is Entitled to Judgment as a Matter of Law**

1.   *Section 5(a)(5) of Chapter 21E is not a Negligence Standard*

Mass. Gen. Laws c. 21E, § 5(a)(5) ("§ 5(a)(5)") provides that "any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, shall be liable, without regard to fault." Unlike CERCLA, see Section III.B., *infra,* Chapter 21E extends to releases of uncontaminated oil, and, in §5(a)(5) treats releases of oil and hazardous materials identically. The Court, therefore, may assume arguendo that the release at the Property includes uncontaminated and unused oil and/or hazardous materials in the form of waste oil, since, in either event, Conalco is liable under § 5(a)(5).

Conalco resists the plain language of § 5(a)(5) with a through-the-looking-glass interpretation that would rewrite Massachusetts case law and ignore binding First Circuit

4

precedent. According to Conalco, a defendant is not liable under § 5(a)(5) unless it is "established that the alleged act or omission of the defendant which gives rise to the contaminating event was unreasonable in consideration of all the circumstances at the time or based on the failure to comply with some duty that would have prevented the contamination." Conalco Memo. at 13. Conalco is just plain wrong.

It is true, as Conalco says, Conalco Memo. at 11, that the SJC in Griffith v. New England Telephone and Telegraph Co., 420 Mass. 365 (1995), focused on whether the defendant had a duty to maintain leaking oil tanks to determine whether or not the defendant had liability under § 5(a)(5). The question which the Court was trying to answer was whether there was a "showing that the defendant's conduct caused the release," id. at 374, given that "to impose liability under § 5(a)(5) actual proof of causation is needed." Id. at 369. In Griffith, however, "there was no evidence of how or exactly when that contamination occurred," id. The SJC in Griffith, therefore, looked to the existence of duty and breach only as an alternative means to establish causation in the absence of direct evidence.

Griffith and its progeny have no applicability here, where an eyewitness account of the causation of releases of oil and hazardous material in the form of waste oil during Conalco's ownership and operation of the Property is unrefuted. The innovation in Griffith (which is not relevant in this case) is that the Court crafted a rule to provide for liability even in cases where direct evidence of causation is, for all practical purposes, unavailable. When there is "evidence, for example, that the tank was improperly installed, or that it was left in the ground for an unreasonable period of time," Marenghi v. Mobil Oil Corp., 420 Mass. 371, 374 (1995), the evidentiary hurdle in an underground storage tank leak case might be overcome, as long as the defendant had a concomitant duty to properly install the tank or remove the tank at a reasonable

5

time. Establishing a defendant's lack of reasonable care or omission in the presence of a duty is not a requirement under § 5(a)(5), but rather a means to satisfy the statute's liability standard when direct proof is lacking.

Where there is eyewitness evidence of causation, however, there is no need to inquire into duties. Conalco is correct in pointing out that several "cases decided after Griffith and Marenghi also required proof of breach of duty for purposes of determining liability under M.G.L. Chapter 21E, § 5(a)(5)," Conalco Memo. at 12, but the cases cited only confirm the SJC's holdings on how to establish liability when there is no direct evidence of causation (and all but one of the cases cited involved releases from underground storage tanks—the same as Griffith and Marenghi), and, accordingly, the theory of causation allegedly supported by the evidence in these cases required showing a breach of duty. See Commonwealth v. Boston Edison Co., 444 Mass. 324, 333 (2005) ("Boston Edison claims that the Commonwealth's failure to file suit or move to enjoin the Sak defendants' activities on the site between 1984 and 1996 'had the very real and dramatic impact of greatly exacerbating the condition of contamination at the [s]ite.'"); Domestic Loan and Inv. Bank v. Ernst, 1998 WL 1284185 (Mass.Super.,1998) (underground storage tank spill); Newly Weds Foods, Inc. v. Westvaco Corp., 2002 WL 1923864 (Mass.Super. 2002) (same).

Conalco's gambit to re-write the law is chiseled into sharp relief by its citation of the District Court's opinion in Marina Bay Realty Trust LLC v. United States, 2004 WL 1175121 (D.Mass. 2004). See Conalco Memo. at 13, where the plaintiffs sued the United States government under the Federal Tort Claims Act ("FTCA") asserting liability under Chapter 21E, § 5(a)(5). The United States moved for judgment on partial findings arguing that that the plaintiffs failed to prove negligence and that the FTCA does not waive sovereign immunity for

Chapter 21E claims. The district court granted the motion because "liability under Chapter 21E is 'without regard to fault' and simply does not require a 'wrongful act or omission' that is a necessary prerequisite to the FTCA's waiver of sovereign immunity. Where, as here, there has been no showing of negligence or other tortious conduct, plaintiffs' claims under Chapter 21E are barred." Id. at *1 (citations and footnotes omitted) (emphasis added). The First Circuit Court of Appeals established the binding precedent of this Circuit in affirming the decision below:

> Chapter 21E states that "any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a ... site, shall be liable, without regard to fault." Chapter 21E § 5(a)(5). Although the "without regard to fault" language suggests that the statute imposes strict liability, the Supreme Judicial Court of Massachusetts has held that the causation requirement of Chapter 21E, Section 5(a)(5) requires showing of more than mere ownership. See Griffith v. N. Eng. Tel. & Tel. Co., 420 Mass. 365, 649 N.E.2d 766, 769 (1995). Contrary to Appellants' contention, however, this does not mean that any violation of Chapter 21E is "negligent or wrongful" for purposes of the FTCA—it simply means that a prior owner cannot be held liable absent a showing that the prior owner caused the contamination. The plaintiff need not show that the prior owner was negligent or wrongful in doing so.

Marina Bay Realty Trust LLC v. United States, 407 F.3d 418, 424 (1st Cir. 2005) (emphasis added). In the face of this authority, it is difficult to see how Conalco can hope to show that its failure to acknowledge and assume its liability for the releases it caused—much less its instant motion for summary judgment—has been or is in good faith.

Conalco's argument is not only without legal support, it goes against the grain of what the cases say about § 5(a)(5) and Chapter 21E. In essence, Conalco contends that it should not be responsible for its contaminating practices, including using mineral spirit solvents and squeegeeing accumulated spilled oil to dispose of it in the basement below the work area because "Conalco's methods of disposal were commonplace in the industry," Conalco Memo. at 13, and "Conalco did not foresee the potential environmental impact of such activities." Conalco Memo.

7

at 13-14. Conalco offers nothing to suggest that "everyone else did it" and "we didn't know any better" constitute valid defenses under Chapter 21E.[1] There is no support for Conalco's proffered gloss upon the Commonwealth's environmental protection laws. The only relevant inquiry under § 5(a)(5) is: Did Conalco cause the contamination? There is no genuine issue of material fact that Conalco did so.

2.  ***Conalco is Liable for Release of Hazardous Materials as a Former Owner and Operator of the Property***

Section 5(a)(2) of Chapter 21E extends liability to "any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material." Unlike § 5(a)(5), § 5(a)(2) does not apply to releases of oil.

Conalco correctly cites Chapter 21E for the definition of oil as "insoluble or partially soluble oils of any kind or origin or in any form, including, without limitation, crude or fuel oils, lube oil or sludge, asphalt, insoluble or partially insoluble derivatives of mineral, animal or vegetable oils." Mass. Gen. Laws, c. 21E, § 2. Chapter 21E also provides that "[t]he term ["oil"] shall not include waste oil, and shall not include those substances which are included in

---

[1] Courts have long recognized that custom and duty are not always one and the same. In the seminal case The T.J. Hooper, 60 F.2d 737 (2d Cir. 1932), the issue was whether a ship was unseaworthy by virtue of its failure to have a working radio on board. Judge Learned Hand explained as follows:

> There are, no doubt, cases where courts seem to make the general practice of the calling the standard of proper diligence; we have indeed given some currency to the notion ourselves. Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however persuasive be its usages. Courts must in the end say what is required; there are no precautions so imperative that even their universal disregard will not excuse their omission.

Id. at 740 (citations omitted). Whether Conalco had such a duty when it owned and operated the Property is a question of law, not of fact. It is a question, however, that this Court does not have to reach because Conalco's argument fail at the threshold.

42 USC Sec. 9601(14)." Conalco does not appear to be arguing that waste oil is not a hazardous material as defined in Chapter 21E. Chapter 21E does not define the term waste oil, though it is defined in Chapter 21E's implementing regulations, the Massachusetts Contingency Plan, 310 C.M.R. 40.0006: "Waste Oil means used and/or reprocessed, but not subsequently re-refined, oil that has served its original intended purpose. Waste oil includes, but is not limited to, used and/or reprocessed fuel oil, engine oil, gear oil, cutting oil, and transmission fluid and dielectric fluid." See Conalco Memo. at 10 n.6. This definition encompasses the spilled oil that Conalco, according to the undisputed evidence in Mr. Lappies's sworn statement, disposed of at the Property.

Chapter 21E does not explicitly state that waste oil is a hazardous material, but the obvious legislative intention for waste oil releases to be covered under Chapter 21E as hazardous materials releases is manifest in the Massachusetts Contingency Plan's definition of hazardous material: "The term ['hazardous material'] shall not include oil, but shall include waste oil and all those substances which are included under 42 U.S.C.§ 9601(14), but it is not limited to those substance." 310 C.M.R. 40.006. A Massachusetts Superior Court case reflects the common understanding that waste oil is a hazardous material under Chapter 21E. See Braber v. Pearlman, 1993 WL 818642, *4 (Mass.Super. 1993) ("The parties agree[d] that waste oil is a 'hazardous material' under the Section 2 definitions of 'Hazardous material' and 'Oil.'").

Conalco at no point in its argument attempts to refute the direct eyewitness evidence from Mr. Lappies that Conalco disposed of waste oil at the Property. Eschewing the obvious, Conalco instead attempts to use expert opinions to suggest that the used and spilled oils Conalco discarded were somehow not waste oils because that is not how the Property has been classified for regulatory purposes or because one laboratory analysis report (which Conalco does not

provide the Court) makes statements with which Conalco's expert disagrees. None of this refutes Mr. Lappies's statement or creates a genuine issue as to Mr. Lappies account of what happened when Conalco owned and operated the Property.

Determining whether or not Conalco released hazardous materials—waste oil—while it owned and operated the Property is a singularly unscientific exercise. Oil that had been used for drawing aluminum was loosened up with mineral spirits solvents and then squeegeed and dumped to the earth floor and concrete block room below the work area, where Conalco left it when Conalco shut down the business, sold the premises and left town. Conalco has identified no continuing use or purpose for the material it disposed of in this fashion, and Conalco never treated it as anything other than waste. No amount of expert testimony purporting to tinker with regulatory or chemical nuances can establish a genuine dispute about these facts, and the Court properly should determine that Conalco is liable under § 5(a)(2) as a "person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material."

3.  ***Cariddi is Entitled to Judgment as a Matter of Law on Counts II and III***

Only through recalcitrant adherence to meritless legal contentions has Conalco managed to shirk its responsibility to address the releases for which the facts and controlling case law establish its liability. Because the undisputed facts establish that Conalco caused a release of oil and hazardous materials at the Property and that hazardous materials were disposed of when Conalco owned and operated the property, Cariddi is entitled to judgment as matter of law as to Conalco's liability for response costs incurred by Cariddi and to a declaratory judgment as to Conalco's liability for response costs to be incurred by Cariddi to perform response actions in the

future to address the releases of oil and hazardous materials at the facility for which Conalco is liable. The amount of response costs incurred and the appropriate allocation of response costs among the parties, as well as the awarding of attorneys' and experts fees to Mr. Cariddi, will remain to be adjudicated following the Court's entry of summary judgment in favor or Mr. Cariddi.

### B. Cariddi is Entitled to a Trial on his CERCLA Claim

It is an undisputed fact that hazardous substances and materials are present in the waste oil and soils at the Property. Answers to Defendant's Interrogatories 15 and 16; see also Affidavit of Lawrence Feldman, LSP, Ph.D. ("Feldman Affidavit") at ¶ 11. Notwithstanding this fact, Conalco contends there is no material question of fact that the oily wastes that Conalco released at the Property are exempt from treatment as a "hazardous substance" by CERCLA due to CERCLA's "petroleum exclusion." See 42 U.S.C. § 9601(14)(F). Conalco's argument is based on a misstatement of the legal standard for evaluating whether the waste oil fits within the petroleum exception.

Conalco correctly identifies the general principle that the petroleum exclusion "remove[s] from coverage of CERCLA those otherwise hazardous substances which are inherent in petroleum, but not hazardous substances that are added to, or mixed with, a petroleum product during or after use." Conalco Memo. at 7, quoting Niecko v. Emro Marketing Co., 769 F.Supp. 973, 981 (E.D.Mich. 1991) (emphasis in the original). Conalco also correctly recognizes that the petroleum exclusion "does not apply to hazardous substances which are added to petroleum products during use." Conalco Memo. at 8 (quoting Organic Chemical Site PRP Group v. Total Petroleum Inc., 58 F.Supp.2d 755, 763 (W.D.Mich. 1999). Conalco errs, however, in attempting to transform this principle into a CERCLA immunity for oil releases where the source of

11

contamination by hazardous substances of the released oil is either unknown or potentially related in the soil matrix in which waste oils are found at the Property. This mistake becomes fatal to Conalco's motion for summary judgment in light of the burden Conalco bears to establish the applicability of the petroleum exception. Johnson v. James Langley Operating Company, Inc., 226 F.3d 957, 963 n.4 (8th Cir. 2000).

      Behind Conalco's error seems to lie the assumption that the actual levels of hazardous substances can in some way dispose of the question whether the release at the Property is subject to the petroleum exception. See Conalco Memo. at 8 ("To avoid the petroleum exclusion, the hazardous substances in a petroleum product must be elevated at the time of release."). Another aluminum company, Alcan Aluminum Corp., unsuccessfully made a similar argument to the Third Circuit.

> Alcan contends that its emulsion is "used oil" with concentration levels of cadmium, chromium, copper, lead and zinc that are lower than the levels of these compounds in virgin oil and therefore falls within the petroleum exclusion. Although this argument has superficial appeal, it cannot withstand close scrutiny.

United States v. Alcan Aluminum Corp., 964 F.2d 252, 266 (3d Cir. 1992). The Third Circuit rejected Alcan's argument and instead followed the Environmental Protection Agency, which has said that it "does not consider materials such as waste oil to which listed CERCLA substances have been added to be within the petroleum exclusion," 50 Fed.Reg. 13,460 (1985). The Third Circuit also approved the district court's ruling in United States v. Alcan New York, 755 F.Supp. 531, 539 (N.D.N.Y. 1991), that "a plain reading of the 'exclusionary' provision does not warrant the inclusion of oil which has become contaminated with hazardous substances through use; rather what does come within the ambit of the 'petroleum exclusion' is the oil or oil fraction which naturally contains the hazardous substance(s) unless the fraction itself is

12

specifically listed or designated as a hazardous substance." Alcan Aluminum Corp., 964 F.2d at 267.

Absolute levels of hazardous substances in oil cannot settle the applicability of the petroleum exception, and a plain reading of the petroleum exclusion "does not warrant the inclusion of oil which has become contaminated through use." Id. "[W]hat does come within the ambit of the 'petroleum exclusion' is the oil or oil fraction which naturally contains the hazardous substance(s)." Id. Conalco provides no support for the proposition that the hazardous substances found in soil samples as contaminated by waste oil were indigenous to the oil, even though it bears the burden to do so. Johnson, 226 F.3d at 963 n.4. Given that there is no dispute that the oil now on and in the soil at the Property was used to draw aluminum and certainly came into contact with other substances at the Property (*e.g.*, whatever happened to be on the floor), Conalco has failed to eliminate all issues of material fact concerning the applicability of the petroleum exception. See United States v. Gurley, 43 F.3d 1188, 1199 (8th Cir. 1994).

The Court should deny Conalco's motion for summary judgment on Cariddi's CERCLA claim. Conalco has failed to exclude the possibility that the hazardous substances in the Sludge were not indigenous to the oil used and disposed of at the Property.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Conalco's motion for summary judgment as to all and enter summary judgment in favor of Mr. Cariddi on Counts II and III of the Complaint, including a declaration that Conalco is liable for conditions at the Property and for response costs incurred and to be incurred in the future by Mr. Cariddi.

> The Plaintiff
> JAMES V. CARIDDI
> By his attorneys,
>
>
> /s/ Christopher B. Myhrum
> Christopher B. Myhrum, Esq.
>   BBO# 365980
> Gastón de los Reyes
>   BBO# 662200
> Bulkley, Richardson and Gelinas, LLP
> 1500 Main Street
> Suite 2700
> Springfield, MA  01115-5507
> Tel:  (413) 781-2820

Dated:  May 1, 2006

### Certificate of Service

I, Christopher B. Myhrum, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

> /s/ Christopher B. Myhrum
> Christopher B. Myhrum

#319057

14

Case 3:05-cv-30111-MAP    Document 31    Filed 05/01/2006    Page 15 of 15