UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30111-MAP

|  |  |
|---|---|
| JAMES V. CARIDDI,<br>    Plaintiff<br><br>v.<br><br>CONSOLIDATED ALUMINUM CORPORATION,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MEMORANDUM AND REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## Introduction

Defendant, Consolidated Aluminum Corporation ("Conalco") submits this memorandum and reply to Plaintiff, James V. Cariddi's ("Mr. Cariddi") opposition to Conalco's motion for summary judgment on all three counts of Plaintiff's Complaint and in opposition to Mr. Cariddi's cross-motion for summary judgment as to Count II and Count III. As set forth below, Mr. Cariddi has failed to come forward with properly supported evidence of disputed material facts that require trial on Count I – Mr. Cariddi's claim under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") – and as a matter of law, the undisputed facts do not give rise to a claim under M.G.L. c. 21E, § 5(a)(2) or (5) - Count II, and therefore a declaration as to Conalco's liability under Count III for Mr. Cariddi's future response action costs pursuant to G.L. c. 21E is inappropriate. In the event that this court should determine as a matter of law that the words "otherwise caused or is legally responsible" in M.G.L. c. 21E, § 5(a)(5) do not encompass a negligence-based causation standard, there

nonetheless remains a disputed material fact as to whether the oil allegedly released or disposed of by Conalco at the Property twenty-five years ago is the same oil for which Mr. Cariddi seeks response action costs today thereby precluding entry of summary judgment in Mr. Cariddi's favor.

### I.     Mr. Cariddi's CERCLA claim (Count I) is barred by the petroleum exclusion.

Mr. Cariddi has the burden to demonstrate that there was a release of hazardous substances at the property. CERCLA Section 107(a)(2)(3) and (4). Conalco has presented uncontroverted evidence, supported by expert opinion, that (1) only oil or petroleum products were used by Conalco in its aluminum drawing process, (2) the only evidence of hazardous substances present at the Property is derived from laboratory analysis of samples of the soils, solids and groundwater collected from the Property more than 25 years after Conalco's use of oil or petroleum products, and (3) the presence of hazardous substances in the laboratory analysis is explained as being attributable to soils or common constituents of petroleum products, thereby bringing the materials squarely within CERCLA's petroleum exclusion. (Conalco Memo. at 7-8).

In demonstrating that there is insufficient information to establish that there was a release of hazardous substances, and demonstrating the applicability of CERCLA's petroleum exclusion, Conalco has negated an essential element of Plaintiff's claim. The burden then shifts to the Plaintiff to show a hazardous substance release. Celotex Corp. v. Catrett, 477 U.S. 317, 323-325 (1986). By simply stating, as Mr. Cariddi has in his submittals, that hazardous substances are present, is not enough.

Mr. Cariddi does not dispute that only oil or petroleum products were used by Conalco in drawing aluminum tubing. (Cariddi Opposition at 2). Conalco has provided expert testimony

that the material released at the Cariddi site is oil or petroleum, not hazardous materials or substances. (Feldman Affidavit, ¶ 3). Mr. Cariddi has not challenged that opinion. Instead, Mr. Cariddi contends that Conalco "failed to eliminate all issues of material fact concerning the applicability of the petroleum exclusion" (Cariddi's Memo. at 13) by stating, incorrectly, that the source of hazardous substances found in laboratory samples are "either unknown or potentially related [to] the soil" from which laboratory samples were obtained.

Conalco says no such thing. Dr. Feldman opines that hazardous substances, reported to be present in laboratory samples, are either natural components of Massachusetts soils or found in soils of industrial sites or common constituents of petroleum products. (Feldman Affidavit, ¶ 11). Thus, Conalco explains the presence of hazardous substances or materials found in the samples and Mr. Cariddi offers only the incorrect statement that the sources of these hazardous substances are "either unknown or potentially related [to] the soil." Mr. Cariddi has come forward with no evidence demonstrating that hazardous substances, to the extent present in the oil at the time of the release were anything other than "inherent" or normally found, or that their presence in the samples is on account of hazardous substances added to or mixed with a petroleum product during or after use.

At best, Mr. Cariddi suggests that the oil used by Conalco, when it came in contact with the floor became contaminated by other substances. (Cariddi Memo. at 13). Mr. Cariddi, however, provides no evidence or information of what those substances might be or whether those substances were hazardous substances, and if so, were the same hazardous substances found present in the samples taken from the Property. Thus, Mr. Cariddi has failed to present an issue of material fact with respect to Conalco's motion for summary judgment on Count I.

Mr. Cariddi's reference to United States v. Alcan Aluminum Corp., 964 F. 2d 252, 266

(3rd Cir. 1992) is misplaced. Unlike the Alcan matter, in which Alcan acknowledged that its process adds hazardous substances to the oil, it is undisputed that only oils were used by Conalco, not hazardous substances, and that the only evidence of hazardous substances present at the Property is from soil samples taken 25 years later. The hazardous substances present in the samples are attributed to materials present in the soils, not in the oil, or inherent in the oil or petroleum. (Feldman Affidavit, ¶ 11). Thus, given the absence of any disputed material fact, and as a matter of law, Conalco is entitled to summary judgment on Count I of Mr. Cariddi's complaint on the ground that his claim is barred by CERCLA's petroleum exclusion.

     **II.    Mr. Cariddi is not entitled to summary judgment on his M.G.L. c. 21E, § 5(a)(2) claim because only "oil" not "waste oil" was released during Conalco's watch.**

Mr. Cariddi relies solely upon Mr. Lappies' characterization of the oil used by Conalco in its aluminum tube drawing operations when released to the basement as "waste oil" to support his position that there was a release of not "oil," but rather "hazardous materials." Mr. Lappies characterization of the oil as "waste oil" does not make it such. "Waste oil" is a defined term. (Conalco Memo. at 10). While Conalco does not dispute Mr. Lappies' account of what happened when Conalco owned and operated the Property, his use of the magic term "waste oil" in his affidavit does not transform the material released to a "hazardous material."[1]

     **III.    This court should determine as a matter of law that the words "otherwise caused or is legally responsible" in M.G.L. c. 21E, § 5(a)(5) requires the application of a negligence-based causation standard.**

M.G.L. c. 21E, § 5(a)(5) must be read in context. While G.L. c. 21E was founded on CERCLA, and the provisions of Section (5)(a)(1)-(4) largely mimic CERCLA § 107, Section 5(a)(5) has no counterpart in CERCLA. In adopting the G.L. c. 21E, the Massachusetts

---

[1] Mr. Lappies has no training, experience or educational background in the identification or manufacture of chemicals or oils. Lappies Depo. Trans. 25-26. The affidavit which he signed was prepared by others. Lappies Depo. Trans. 32-36. See Affidavit of Robert D. Cox, Jr., dated May 12, 2006 appending additional portions of Mr. Lappies Deposition Transcript.

- 4 -

legislature clearly chose not to make past owners and operators of sites contaminated by oil strictly liable for oil contamination. The omission of the word "oil" from Sections 5(a)(2), (3) and (4), which refer exclusively to "hazardous material," means that only two of the five categories of Section 5(a) apply in cases involving "oil" contamination. Section 5(a)(1) makes liable the "owner" and "operator" of a site at or from which there has been a release of oil. Thus, the Massachusetts legislature determined that current owners, such as Mr. Cariddi, should bear responsibility for oil contamination, but that past owners or operators, such as Conalco, should not bear strict liability for oil contamination. In short, given the definitions of "oil" and "hazardous material" and the liability structure of Section 5(a)(2)-(4), "past owners or operators of sites contaminated by oil . . . cannot be held strictly liable for oil contamination occurring while they owned or operated the site." Griffith v. New England Telephone & Telegraph Company, 414 Mass., 824, 829 (1993). ("Griffith I").

Plaintiff would have this court impose liability upon a prior owner, contrary to the provisions of Section 5(a)(1) and (2), by removing from words "otherwise caused or is legally responsible" any notion that the words employ a negligence-based theory of liability. Plaintiff's position can be best analyzed as an effort to read into the term "causation" "but for;" "but for" the causal agent, and all subsequent events which follow, a defendant is liable under Section 5(a)(5). This "but for" reading of "causation" is contrary to Griffith v. New England Telephone and Telegraph Company, 420 Mass. 365 (1995), and Marenghi v. Mobil Oil Corporation, 420 Mass. 371 (1995). The SJC could have said in Griffith that "but for" the oil brought onto the property and stored in a tank that subsequently leaked is enough to establish "causation" under § 5(a)(5). The court, however, did no such thing. Thus, Plaintiff's effort to

{Client Files\ENV\303730\0001\FEDERAL\00701977.DOC;2}

urge this court to read into prior Massachusetts law and the term "causation" a "but for" type standard should be rejected.

Certainly, the Massachusetts legislature had no intention of imposing liability upon a prior owner or operator for a release of oil in the absence of some duty owed or legal responsibility. Common law imposed no such duty to a subsequent owner. Wellesley Hills Realty Trust v. the Mobil Oil Corporation, 747 F. Supp. 93, 99 (1990). The Massachusetts legislature could have chosen to impose strict liability upon such prior owners by including the term "oil" in Section 5(a)(2). The legislature, however, did not do so and prior decisions show that a negligence-based duty and breach is required to impose Section 5(a)(5) liability.

Plaintiff's suggestion that his application of Section 5(a)(5) is consistent with the overall remedial purposes of Chapter 21E is similarly is misplaced. The contaminating events occurring during Conalco's watch occurred decades ago, well before Chapter 21E, and Mr. Cariddi has owned the property and benefited from its use for over 25 years without taking any action, or incurring any costs, to address the contamination. The Massachusetts legislature made him strictly liable under Section 5(a)(1) as a current owner or operator, but not prior owners or operators for oil contamination, consistent with common law. Id. The interpretation of Section 5(a)(5) proposed by Mr. Cariddi would provide him with a windfall: the benefit of the use and appreciated value, but without bearing the cost which the Legislature chose to impose upon current owners and operators when it adopted Chapter 21E, years after Conalco ceased all operations at the Cariddi property.

Plaintiff's argument that the First Circuit Court of Appeals has already decided this issue in Marina Bay Realty Trust, LLC v. The United States, 407 F. 3d. 418, 424 (1st Cir. 2005) is simply wrong. In Marina Bay, Plaintiff brought a claim under the Federal Tort Claims Act,

("FTCA") and, when faced with facts showing no negligence or other tortuous conduct so as to give rise to a FTCA claim, asserted a violation of Chapter 21E. Neither the District Court nor the First Circuit Court of Appeals in Marina Bay considered the issue now before the court; namely, whether the words "otherwise caused" or "legally responsible" encompass a negligence-based standard.

Plaintiff's reference to the seminal case of The T.J. Hooper, 60 F. 2d. 737 (2nd Cir. 1932) demonstrates the correctness of Conalco's position. In seeking to proscribe future conduct relating to use of a working radio on board a ship, Judge Leonard Hand explained that courts must at some point set a new standard of practice. Such is not the case here, however, where M.G.L. c. 21E and other environmental protection laws, adopted subsequent to Conalco's activities, now prohibit the very acts attributed to Conalco; acts which at the time were consistent with industry standards and without any appreciation of future potential environmental impact. Consequently, it is imperative for this court to maintain the negligence-based aspect of Section 5(a)(5) as established by Massachusetts courts, and determine here that the absence of any duty to prevent the release of oil at the Property precludes the imposition of liability under Section 5(a)(5).

For these reasons, the court should grant summary judgment in favor of Conalco and deny Plaintiff's cross-motion for summary judgment. If, however, the court should determine that the terms "otherwise caused or is legally responsible" do not include a negligence-based standard, summary judgment may not enter for Mr. Cariddi. Even assuming that Conalco "caused" the release so as to give rise to its liability under Section 5(a)(5), based upon the testimony Mr. Lappies and the affidavit of Dr. Michael J. Wade, there is a disputed issue of fact

as to whether the oil allegedly released by Conalco is the oil or material for which Cariddi claims response action costs.

Mr. Cariddi does not dispute the fact that four types of oil were used by Conalco: light oil, heavy oil, mineral spirits and kerosene. (Conalco Memo. at 3, Lappies Dep., Trans. pp. 53-54, and 174; Feldman Affidavit, ¶ 5; Cariddi Opposition). Nor is there any dispute that only these oils, as stated by Mr. Lappies, could have seeped through the floor or been pushed through holes or cracks to the basement below. With its motion, Conalco submitted the affidavit of Dr. Michael J. Wade incorporating his expert report. As explained in his report, Dr. Wade reviewed chromatograms of laboratory samples taken from the Property. (Dr. Wade Affidavit, ¶ 2; Dr. Wade Report, Sections 2.0, 3.0, pp. 1-5). Dr. Wade opines that none of the oils used by Conalco in its aluminum tubing operation which were released to the basement as described by Mr. Lappies were identified in the chromatograms. (Dr. Wade Report, Sections 2.0 and 4.0, pp. 1, 5-8). Thus, there is a disputed material fact as to whether the oil which Conalco "caused" to be released to the basement below is the same oil or material for which Mr. Cariddi now claims response action costs.

Nor does Mr. Cariddi dispute that six years before Conalco owned the Property and operated aluminum drawing activities, oil was present in the basement of the Property. (Lappies Depo. Trans. pp. 145-147, 152, 203; Cariddi Opposition). Consequently, the contamination for which Mr. Cariddi seeks response action cost may not be a release "caused" by Conalco. To impose liability under Section 5(a)(5), a plaintiff must establish both that the defendant caused the release and that the release caused the contamination. There must be a "causal link" between release and the contamination. John Beaudette, Inc. v. J.P. Noonan Transportation, Inc., 315 Mass. 311, 314 (1995); Providence & Worcester R.R. v. Chevron U.S.A., 416 Mass. 319, 322-

323 (1993). Even assuming Conalco caused the release, Plaintiff cannot demonstrate that the release caused the contamination for which response cost were incurred. Thus, summary judgment may not enter for Mr. Cariddi as to Counts II and III.

 Respectfully submitted,

 CONSOLIDATED ALUMINUM CORPORATION
 By its attorneys,


 */s/ Robert D. Cox, Jr*
 Robert D. Cox, Jr., BBO#546486
 Ryan T. Killman, BBO# 654562
 Bowditch & Dewey, LLP
 311 Main Street, P.O. Box 15156
 Worcester, Massachusetts 01615-0156
 Telephone: (508) 926-3409
 Facsimile: (508) 929-3012
 rcox@bowditch.com

Dated: May 12, 2006

## CERTIFICATE OF SERVICE

 I, Robert D. Cox, Jr., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 12, 2006.

 */s/ Robert D. Cox, Jr.*

{Client Files\ENV\303730\0001\FEDERAL\00701977.DOC;2}