UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30111-MAP

James V. Cariddi,            )
    Plaintiff            )
                             )
v.                           )
                             )
Consolidated Aluminum Corporation,  )
    Defendant            )

## OBJECTIONS OF PLAINTIFF, JAMES V. CARIDDI, TO CHIEF MAGISTRATE JUDGE'S RECOMMENDATIONS ON CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff, James V. Cariddi ("Mr. Cariddi"), pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. Rule Civ. P. 72(b) and Rule 3(b) of the Rules for U.S. Magistrate Judges in the District Court for the District of Massachusetts (D. Mass. Magistrate's Rules), hereby objects to Chief Magistrate Judge Neiman's Report and Recommendation ("Recommendation") with regard to Cross-Motions for Summary Judgment entered November 15, 2006. Mr. Cariddi's objections "specifically identify[ing] the portions of the . . . recommendation or report to which objection is made and the basis for each objection," D. Mass. Magistrate's Rules, Rule 3(c), are as follows:

    1.    <u>Recommendation that Summary Judgment be entered for defendant on Mr. Cariddi's claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq*.</u>: The Chief Magistrate Judge summarizes Mr. Cariddi's argument regarding the applicability of the petroleum

exclusion on pages 7 and 8 of the Recommendation. In recommending summary judgment in defendant's favor on the CERCLA claims, the Chief Magistrate Judge relieves defendant of the obligation to eliminate all material issues of fact concerning the applicability of the petroleum exclusion as required by <u>United States v. Gurly</u>, 43 F.3d 1188, 1199 (8th Cir. 1994). The evidence of record establishes that hazardous substances are present at the premises, and, while defendant's expert offers an opinion that the hazardous substances were "likely" natural components of Massachusetts soils, Recommendation at 9, defendant did not eliminate all material issues of fact so as to warrant summary judgment on CERCLA claims. Mr. Cariddi objects to the recommendation that defendant's summary judgment on the CERCLA claims be allowed.

    2.    <u>Recommendation that summary judgment be denied on Mr. Cariddi's claims under M.G.L. c. 21, § 5(a)(2)</u>: At pages 10 through 13 of the Recommendation the Chief Magistrate Judge discusses the statutory definitions of "hazardous materials" and "oil." After considering the uncontroverted affidavit and deposition testimony of Norman Lappies ("Mr. Lappies") in light of *Webster's Third New International Dictionary* (unabridged ed. 1967), he states, "the oil at issue here may fall within the definition of 'used.'" *Id.* at 12. The Chief Magistrate Judge concludes that Mr. Lappies' statements "at the very least" raise "genuine issue of material fact as to whether the petroleum products present at defendant's site were 'used' such that they became 'waste oil.'" *Id.* at 13.

    The Chief Magistrate Judge in discussing Mr. Cariddi's Cross-Motion for Summary Judgment, observes: "To be sure, Plaintiff's argument that the spilled 'oil,'

2

whether alone or in connection with the mineral spirits, was 'used' oil — and, hence, waste oil — appears quite strong." *Id.* at 18. However, the Chief Magistrate Judge "deems it premature to make that finding as a matter of law." *Id.*

The Chief Magistrate Judge does not identify what evidence defendant presents to create a genuine issue as to Mr. Cariddi's "quite strong" argument that defendant is strictly liable under M.G.L. c. 21E, § 5 (a)(2) as former owner/operator of a site at or from which releases of hazardous materials — here, waste oil, — and of oil have occurred.

There is no dispute that defendant formerly owned and operated the premises.

There is no dispute that there have been releases at the facility.

Defendant "does not dispute Mr. Lappies' account of what happened when Conalco owned and operated the property . . . ." Defendant's Memorandum and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment, at 4.

Mr. Lappies' account of defendant's continuation of practices of prior owners and operators by spewing oil about the work place and intentionally disposing of spilled oil through the floor of the work area onto the earthen basement floor and concrete block generator room below is uncontroverted. Lappies Affidavit, Exhibit A to Affidavit of Christopher B. Myhrum, Esquire, paragraphs 5, 11 and 12; see also Lappies Deposition, Exhibit B to the Affidavit of Christopher B. Myhrum, Esquire, at p. 68, lines 5 – 18; p 145, lines 10-23; p. 152, lines 7-20; p. 75, lines 14 through p. 176, lines 23; p. 185, lines 1-7; p. 185, lines 21 through p. 187, line 3. There is no genuine issue that process

oils had served intended purposes and Conalco intentionally disposed of them to clean up the work area. *Id.*

Mr. Cariddi respectfully submits, therefore, that there is nothing premature about concluding the obvious from the undisputed account offered by Mr. Lappies. Defendant caused a release of waste oil by intentionally disposing of used oil to the earthen floor beneath the work area. That defendant also caused oil releases (from bursting hoses spewing oil that dripped onto the earthen floor beneath the work area) does not obviate the undisputed fact that defendant used the site to dump waste oil and then left it there.

Defendant offers no evidence to rebut Mr. Lappies' account of events. Defendant questions Mr. Lappies' "expert" credentials, but one needs no expertise to call intentionally dumped used oil what it obviously is — waste oil.

Defendant offers no evidence that defendant ever cleaned up the used oil defendant dumped into the basement. What defendant dumped and left behind when it shut down operations and left town included waste oil, a hazardous material, that had been released to the environment, for which releases defendant is liable.

For the reasons stated, Mr. Cariddi objects to the recommendation that summary judgment be denied against defendant and respectfully requests the Court to enter summary judgment in his favor .as to defendant's liabililty on his claims under M.G.L. c.21E, § 5(a)(2).

3.  <u>Recommendation that summary judgment be denied on Mr. Cariddi's claim under M.G.L. c 21E, § 5(a)(5)</u>: The Chief Magistrate Judge properly rejects defendant's bizarre assertion that M.G.L. c. 21E, § 5(a)(5) incorporates a negligence standard — an argument contrary to express statements made in holdings of the

Massachusetts Supreme Judicial Court and the First Circuit Court of Appeals. Recommendation at 15 through 18. The Chief Magistrate Judge points out that issues cited by defendant "have no applicability where, as here, an eyewitness account of the causation of a release of either 'oil' or 'hazardous material' is undisputed." *Id.* at 16. Moreover in addressing Mr. Cariddi's Summary Judgment Motion, the Chief Magistrate Judge concludes that it is "undisputed" that "Defendant 'caused' the release." *Id.* at 19.

The Chief Magistrate Judge, however, because he does not "deem" a "causal link" to have been indisputably established between the defendant's releases and the contamination for which Mr. Cariddi has incurred and expects in the future to incur response costs, recommends denial of Mr. Cariddi's motion for summary judgment as to liability. *Id.*

Again, the undisputed facts establish that defendant caused releases at the premises. The record is devoid of evidence even remotely suggesting that anyone other than Mr. Cariddi has undertaken response actions to address the contamination. The Chief Magistrate Judge offers two reasons why he will not "go that far" and recommend summary judgment on Mr. Cariddi's M.G.L. c. 21E, § 5(a)(5) claims:

1) Releases Mr. Lappies describes as occurring before those defendant caused; and

2) An expert affidavit that the Chief Magistrate Judge characterizes as stating "none of the four oils used by defendant in its aluminum tubing operation — which were concededly released to the basement — were identified in the chromatograms" the expert reviewed.

Recommendation at 19-20. These reasons are addressed in turn.

<u>Other Releases</u>

The Chief Magistrate Judge appears to confuse the causation liability established by defendants' conceded releases and the undisputed fact that only Mr. Cariddi has performed response actions to address such releases, on the one hand, and the separate and distinct issues attendant to allocation of responsibility for response costs, an issue not before the Chief Magistrate Judge on the parties' summary judgment motions concerning liability.

The releases the Chief Magistrate Judge determines defendant caused — irrespective of whether they were releases of oil, waste oil or both — obviously could not and did not disappear. Defendant advances no explanation as to how its releases could, consistent with the laws of nature somehow not be part of the site contamination. Defendant cannot escape liability merely by pointing out that its continuation of the practices of predecessors necessarily means not only defendant's releases have caused contamination. That defendant continued the same practices as prior owners and operators is undisputed.

Defendant offers no evidence to suggest that the releases it caused would be functionally different from the releases of its predecessors. The Chief Magistrate Judge's determination that defendant caused releases and defendant's failure to create any factual dispute as to the fate of releases it caused establishes defendant's liability, whereupon the burden shifts to defendant to establish "by a preponderance of the evidence that only a portion of [plaintiff(s)] costs or damages is attributable to a release or threat of release for which [defendant] is included as a party under clauses (1) (2) (3) (4) or (5) of [M.G.L. c.

21E, § 5](a)" in order to "be required to pay only for such portions" and avoid being responsible for all costs. M.G.L. c. 21E, § 5(b).

Expert's Report

The Chief Magistrate Judge's description of the statement in the expert's report is taken directly from defendant's brief. *Compare* Recommendation at p. 19 with Defendant's Memorandum and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment at p 8. But the expert report simply does not state what defendant represented to the Court, and, as a matter of material fact, defendant's expert's report creates no genuine issue.

The Report of Michael J. Wade, Ph.D., appears as Exhibit 1 to his affidavit. Notably, Dr. Wade in his affidavit nowhere states that the releases caused by defendant are not the source of contamination at the premises for which Mr. Cariddi has incurred and will incur response costs.

Instead, in his report, Dr. Wade recounts being provided chromatograms by defendant's counsel and reviewing Mr. Lappies' deposition testimony. Dr. Wade offers his thoughts about the quality and usefulness of the chromatograms provided, and then constructs a single inquiry: "Can any of the petroleum products identified by the chromatographic results be characterized as mineral spirits, kerosene, light and or heavy oil?" Dr. Wade then expresses a "null hypothesis": "Release of each petroleum product has been identified by the chromatographic results," and an alternate hypothesis: "Release of each petroleum product has not been identified by the chromatographic results." Report at 4.0. The polar alternatives posed for a scientific evaluation of

chromatograms cannot rebut the established facts that defendant caused releases of each of the four items at the premises.

Having created this construct, Dr. Wade immediately rejects "most of the chromatographic work" due to "quality." Dr. Wade then disclaims any expression of opinion as to validity of the underlying information. In the ensuing paragraphs, Dr. Wade purports to explain deficiencies in the chromatograms he deems of sufficient quality to be worthy of his review, and, with respect to each of mineral spirits, kerosene, light oil and heavy oil (the last two being "nonscientific" terms), opines that the chromatograms do not establish, to his satisfaction as a scientist, that the "null hypothesis" applies to any one of the four items defendant caused to be released at the premises. Therefore, Dr. Wade opines, the alternate hypothesis must be accepted, that is, that those chromatograms he chose to review from the chromatograms provided to him do not scientifically establish that the samples of contamination from which the chromatograms were generated were mineral spirits, kerosene, light oil or heavy oil.

Dr. Wade does not conclude that "none of four oils used by defendant in its aluminum tubing operations — were identified in the chromatograms" as the Chief Magistrate Judge stated (quoting from defendant's misleading memorandum). Rather, Dr. Wade opines only that he selects the alternate hypothesis because the chromatograms he reviewed do not identify the four oils in the way he would expect chromatograms to show for purposes of a null set scientific analysis.

Certainly, based on Mr. Lappies' testimony, which Dr. Wade reviewed, Dr. Wade cannot opine that the contamination for which Mr. Cariddi has incurred and expects to incur response costs was not caused, at least in part, by releases defendant concededly

caused. There are no facts to support such a statement — scientifically or otherwise. In sum, Dr. Wade opines, in effect, to nothing more than: I have been given a bunch of lousy chromatograms (most of which I do not deem worthy of review), which, according to my exacting scientific standards, do not, in and of themselves, establish anything.

Mr. Cariddi need only establish that there is no genuine issue of material fact that it is more likely than not that the releases defendant caused have created or contributed to conditions of contamination at the premises for which plaintiff has incurred and/or reasonably expects in the future to incur response costs. An expert's opinion on the shortcomings of chromatograms he reviewed and what the inadequate chromatograms may _not_ show does not create a genuine issue of material fact, especially in the face of undisputed evidence that defendant caused releases at the premises.

It is, at best, strange that defendant concedes causing releases over an extended period of time, accepts Mr. Lappies' account of what occurred while defendant owned and operated the premises (including the intentional disposal of used oil and the spewing of oil from burst hoses), and then, without even attempting to identify a contemporary or subsequent alternative cause of contamination, attempts to maintain there is a genuine issue of material fact about the contamination that occurred from the releases it admittedly caused.

Because the undisputed material facts establish that defendant's releases caused or contributed to contamination existing at the premises for which Mr. Cariddi has incurred and reasonably expects in the future to incur response costs, Mr. Cariddi objects to the Chief Magistrate Judge's Report and Recommendation that summary judgment in his favor and against defendant be denied on his claim under M.G.L. c.21E, § 5(a)(5), and

respectively requests this Court to reject the Chief Magistrate Judge's Report and Recommendation and enter summary judgment in his favor.

Dated: November 30, 2006

> Respectfully submitted,
> The Plaintiff,
> JAMES V. CARIDDI
> By His Attorneys:
>
> /s/ Christopher B. Myhrum
> Christopher B. Myhrum, Esq.
> BBO No. 365980
> Bulkley, Richardson and Gelinas, LLP
> 1500 Main Street, Suite 2700
> Springfield, MA 01115-5507
> Tel: (413) 781-2820
> Fax: (413) 272-6806

Certificate of Service

I, Christopher B. Myhrum, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Christopher B. Myhrum
Christopher B. Myhrum