UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30111-MAP

JAMES V. CARIDDI,
    Plaintiff

v.

CONSOLIDATED ALUMINUM CORPORATION,
    Defendant

**DEFENDANT'S OBJECTION TO CHIEF MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION WITH REGARD TO CROSS MOTIONS
FOR SUMMARY JUDGMENT**

Defendant, Consolidated Aluminum Corporation ("Conalco") hereby objects to the Chief Magistrate Judge's Report and Recommendations with Regard to Cross Motions for Summary Judgment (the "Report") which was entered upon the docket and served upon the parties on November 15, 2006. Conalco objects to that portion of the Report addressing Conalco's alleged liability under M.G.L. c. 21E, § 5(a)(5) for the release of "oil" at plaintiff James V. Cariddi's facility. (Report, pp. 13-19).

The Report recommends that Conalco's request for summary judgment as to Plaintiff's claims alleging liability under M.G.L. c. 21E, § 5(a)(5) be denied. (Report, pp. 13-19). In so doing, the Chief Magistrate Judge reads more from Marina Bay Realty Trust LLC v. United States, 2004 WL 1175121 (D. Mass. 2004), aff'd, 407 F. 3d 418 (1st Cir. 2005), concerning Section 5(a)(5) than that case addressed. Marina Bay's discussion of Section 5(a)(5) needs to be viewed in the context of the claims asserted and the questions those claims raised before the court.

- 1 -

{J:\CLIENTS\env\303730\0001\DOC\00812444.DOC;1}

The plaintiffs in Marina Bay sought to recover remediation costs from the United States. At trial, plaintiffs' sole remaining claim was under the Federal Tort Claims Act ("FTCA"). Apparently conceding that they had not proven negligence so as to give rise as to a direct claim under the FTCA, the plaintiffs asserted that a "violation" of Chapter 21E is sufficient to establish "negligent or wrongful" conduct necessary for the FTCA.

In response to plaintiffs' contention, the First Circuit Court of Appeals noted that the defendant United States could not be liable under the FTCA "without a showing of fault." 407 F. 3d at 424. Referencing the "without regard to fault" language of Chapter 21E, the First Circuit Court of Appeals stated that even though the plain language Section 5(a)(5) "suggests that the statute imposes strict liability, the [SJC] has held that the causation requirement of [Section 5(a)(5)] requires showing of more than mere ownership." (Citing Griffith v. New England Telephone and Telegraph Company, 420 Mass. 365 (1995)). 407 F.3d at 424. Based upon this statement of the law, court held only that "this does not mean that any violation of Chapter 21E is 'negligent or wrongful' *for purposes of the FTCA*." (emphasis supplied). Id. Thus, in ruling on the defendant Untied States' Rule 52(c) motion, the court looked only at the law before it, as set by the Griffith, and nothing more.

The question addressed in Marina Bay, whether a plaintiff may make out a claim under the FTCA by bootstrapping onto it a "violation" of Chapter 21E as a Section 5(a)(5) claim, is far different from the question raised by Concalo in its motion for summary judgment: what the words "otherwise caused" in Section 5(a)(5) mean. Neither the District Court nor the First Circuit Court of Appeals in Marina Bay addressed this issue and careful analysis the use of the words "otherwise caused" in Section 5(a)(5) as applied by the Massachusetts courts leads to the conclusion that they must encompass a negligence-based theory.

The meaning of "causation" has not gone unaddressed by the courts. See e.g. LeBoeuf v. Ramsey, 503 F. Supp. 747, 757 (D. Mass. 1980) ("legal cause subsumes two elements: (1) causation in fact . . . and (2) rules limiting the scope of liability because of the manner in which the conduct has resulted in the harm"), *rev'd on other grounds*, Costa v. Markey, 677 F. 2d 158 (1st Cir. 1982). See also Howard J. Alperin, Massachusetts Practice Summary of Basic Law, § 20.231, pp. 169-71 (3d ed. 1996) ("Two components of causation are related: (1) cause in fact, and (2) proximate cause"). The Chief Magistrate Judge has recommended an application of "causation" that can only be characterized as "but for" causation; that is, "but for" a causal agent, all subsequent events which follow give rise to liability under Section 5(a)(5).

This, however, can hardly be the meaning or application which the Massachusetts legislature intended by use the words "otherwise caused or is legally responsible" in Section 5(a)(5). Indeed, "[t]he 'but for' rule, by itself and without consideration of the nature and degree of the causal connection, cannot determine legal liability, and is at best a rule of exclusion." Alperin, at p.170. Moreover, such a reading of "causation" is contrary to Griffith, and Marenghi v. Mobil Oil Corporation, 420 Mass. 371 (1995). In Griffith, the SJC stated that a plaintiff needs to produce evidence of a duty in order to establish causation. Griffith, 420 Mass. at 369. ("Absent some duty on the part of the defendant to prevent the contamination, the judge's finding [that the tanks caused the contamination] adds nothing to the case that was previously before us in *Griffith I*"; namely, that defendant brought oil and gasoline onto the property is insufficient to establish causation). In Marenghi, the SJC held that plaintiff had not shown unreasonable conduct. Marenghi at 420 Mass. at 374 ("there is no evidence that [the defendant] could have or should have done anything to have prevented the leak . . . no evidence that it is unreasonable to use such a tank for over 22 years . . . for example that the tank was

improperly installed, or that it was left in the ground for an unreasonable period of time"). Had the SJC understood or applied the term "otherwise caused" to encompass a "but for" or "cause in fact" standard, there would have been no need for it to look to a duty and breach or unreasonable conduct as necessary to satisfy "causation" under Section 5(a)(5). Instead, had the SJC adopted a "but for" application of the term "caused" for purposes of Section 5(a)(5), it would have said in Griffith that the oil brought onto the property and stored in a tank that subsequently leaked is enough to establish "causation" under Section 5(a)(5) – that "but for" the defendant's act of bring and storing oil in a tank which was the undisputed source of the release falls squarely within the scope of the term "otherwise caused" of Section 5(a)(5); it would have said in Marenghi that "but for" the defendant's conduct of storing oil, there would have been no contamination. This, however, the court did not do.

The Chief Magistrate Judge states that the SJC in these cases "looked to the existence of duty and breach only as a means, other than through direct evidence, to establish causation" and that the "SJC's innovation in Griffith . . . is having crafted a rule which provide[s] for possible liability where direct evidence of causation is, for all practicable purposes, unavailable." (Report, p. 16). Nothing in Griffith or Marenghi, however, suggests that the SJC crafted such a rule, or that the SJC did not mean what it said: duty and breach and unreasonable conduct are the measure by which "otherwise caused" is determined under Section 5(a)(5).

Indeed, the SJC's support for the application of a negligence-based theory – in contrast to the use of duty and breach as an evidentiary function as suggested by the Chief Magistrate Judge – is demonstrated in Boston Edition, 444 Mass. 324 (2005). In that case, the plaintiff argued that the Commonwealth's failure to file suit or move to enjoin the defendants' on-site activities "had the very real and dramatic impact of greatly exacerbating the condition of the contamination at

the [s]ite." Boston Edison, 444 Mass. at 333. While the trial court held the Commonwealth liable as a party who "otherwise caused" under Section 5(a)(5), the SJC reversed because the Commonwealth "had no duty" to exercise its enforcement discretion and on the ground that its delay in filing suit "is simply too far removed from causation to be actionable under Section 5(a)(5)." 444 Mass. at 333-35. The concept of "too far removed from causation" is one of negligence, and proximate cause. "[The] concept of proximate cause simply means that the liability of even a negligent defendant is limited to those cases which are so closely connected with the result and of such significance that the law is justified in imposing liability." Alperin, at p. 170. Thus in Boston Edison, the SJC employs negligence-based concepts - not evidentiary rules as suggested by the Chief Magistrate Judge - to establish "causation" under Section 5(a)(5).

Finally, while the Chief Magistrate Judge is correct to note that in Griffith, the SJC was trying to answer whether there was a "'showing that the defendant's conduct caused the contamination,' because to 'impose liability under Section 5(a)(5) actual proof of contamination was needed,'" (Report, p. 16) Griffith noted only that "mere evidence of site operation or ownership" is not enough and there must be more than a showing that a defendant brought or stored oil on a property even where the tanks "caused" the contamination. Griffith, at 369. That the record in Griffith and Marenghi lacked more direct evidence of the release mechanism by which oil escaped to the environment by no means indicates, as the Chief Magistrate Judge suggests, that where there is "evidence of causation, there would be no need to inquire into defendant's duty." Indeed, it is this inquiry – duty and breach and unreasonable conduct – which Griffith, Marenghi and Boston Edison instruct should be examined to determine whether a party "otherwise caused" a release under Section 5(a)(5).

For these reasons, Conalco objects to the recommendation that summary judgment be denied as to Plaintiff's claims alleging liability under M.G.L. c. 21E, § 5(a)(5) and respectfully requests that the court enter summary judgment in favor of Defendant on this issue as a matter of law.

CONSOLIDATED ALUMINUM CORPORATION
By its attorneys,

/s/ *Robert D. Cox, Jr*
Robert D. Cox, Jr., BBO#546486
Ryan T. Killman, BBO# 654562
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, Massachusetts  01615-0156
Telephone: (508) 926-3409
Facsimile:  (508) 929-3012
rcox@bowditch.com

Dated:  December 4, 2006

### CERTIFICATE OF SERVICE

I, Robert D. Cox, Jr., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 4, 2006.

/s/ *Robert D. Cox, Jr.*

{J:\CLIENTS\env\303730\0001\DOC\00812444.DOC;1}