UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30111-MAP

James V. Cariddi,                    )
            Plaintiff                )
                                     )
v.                                   )
                                     )
Consolidated Aluminum Corporation,   )
            Defendant                )

**Plaintiff's Response to Defendant's Objections
to
Chief Magistrate Judge's Report and Recommendation
on
Cross-Motions for Summary Judgment**

Plaintiff, James V. Cariddi (Mr. Cariddi), responds to the objections of defendant,

Consolidated Aluminum Corporation ("CONALCO"), as follows:

1. CONALCO's objections are a tired rehash of its now painfully old argument

that M.G.L. c. 21E, §5(a)(5) "Section 5(a)(5)" requires something more than a showing

that a party caused a release of oil for liability to attach under the statute.  CONALCO's

misleading presentation of incomplete quotations from case authorities that have now

long established the exact opposite of what CONALCO attempts to argue has already

been thoroughly addressed at pages 4 through 8 of Plaintiff's Memorandum in

Opposition to Defendant's Motion for Summary Judgment and in support of Plaintiff's

Motion for Summary Judgment.  The Chief Magistrate Judge properly rejected

CONALCO's contrived "it wasn't illegal and we didn't know any better" defense.  The

Chief Judge Magistrate's Recommendation accords with the statute's plain language

("any person who otherwise caused or is legally responsible for a release or threat of

release of oil or hazardous material from a vessel or site, shall be liable, <u>without regard to fault</u> …" (emphasis supplied)), First Circuit and Massachusetts Supreme Judicial Court precedent, and the overarching remedial purpose of Chapter 21E to make parties responsible to assess and clean up contamination they have caused.  As defendant's counsel has observed in another context:  "Chapter 21E and the MCP imposes [*sic*] obligations upon the source property owner, operator or responsible party to notify, investigate, assess and remediate contamination."  Cox, Robert, *Recent 21E Cases,* Environmental and Land Use Conference (MCLE 2003).

2.   CONALCO continues to pester the Court with chapter and verse about how to prove a case under Section 5(a)(5) when there is no direct evidence of causation.  As the Chief Magistrate Judge expressly stated in his Recommendation:  "Where, as here, there is undisputed evidence of causation, there would be no need to inquire into Defendant's duty."  Recommendation at 16 (footnote citing cases omitted).  Moreover,  "*Griffith* and its progeny, as Plaintiff points out, have no applicability where, as here, an eyewitness account of the causation of a release of either 'oil' or 'hazardous material' is undisputed."  *Id.*  Unfortunately, CONALCO's advancement of its unsupportable argument appears to have accomplished its apparent purpose—to delay these proceedings and postpone CONALCO's day of reckoning for the mess it caused and left behind.  The Chief Magistrate Judge in disposing of CONALCO's argument drew the necessary inference from the record before him: "First, the parties have expended much energy on this issue." *Id.* at 13.  Fortunately, Chapter 21E affords the Court the means to compensate Mr. Cariddi for the cost of supplying the energy to rebut CONALCO's factually baseless and legally groundless argument.

3.  The undisputed factual record establishes that Mr. Cariddi through legal counsel wrote to CONALCO seeking its participation in response actions[1] to address the contamination resulting from the aluminum extruding operations conducted at the site, and CONALCO responded by denying responsibility because Mr. Cariddi had not provided direct proof that CONALCO caused the releases in question.  Complaint paragraphs 33 and 34 and Exhibits B and C; Answer, paragraphs 33 and 34.  Mr. Cariddi searched out the evidence CONALCO had said was necessary to establish its responsibility and then provided it to CONALCO through legal counsel in the form of a sworn statement from Raymond Lappies.  Complaint paragraph 35 and Exhibit D; Answer paragraph 35.  CONALCO then changed its tune and responded that, even in the face of direct evidence that it caused and contributed to the releases at the Premises, it was not responsible because it did not violate any law or breach any duty.  Complaint paragraph 36 and Exhibit E; Answer, paragraph 36.

At no time has CONALCO even attempted to suggest that any response actions other than those Mr. Cariddi has performed have been taken to address the contaminated areas CONALCO left behind at the Premises.  CONALCO's latest dodge appears to be that it can escape responsibility for the mess it caused and left behind if Mr. Cariddi cannot prove exactly what contamination it caused—as though the consequences of its dumping over nine years of operations have somehow just disappeared.  Of course, here, unlike the cases CONALCO has cited on causation of contamination, the evidence is overwhelming that the CONALCO caused releases in fact contaminated the Premises.  Compare Statement of Raymond Lappies, paragraphs 11 and 12, and Deposition of

---

[1] The definition of Response Actions in Chapter 21E, Section 2, is expansive:  "'Respond' or 'Response' or 'Response action' [means] assess, assessment, contain, containment, remove and removal."

Raymond Lappies, p. 145, lines 10 through 23, with *Providence and Worcester Railroad Co. v. Chevron, U.S.A. Inc.*, 416 Mass 319, 321-322, 622 N.E.2d 262, 264 (1993) (single release in 1972 onto frozen ground of fuel oil that was all pumped from the ground surface by the end of the day of the spill insufficient to establish defendant caused groundwater contamination detected at site in 1988), and *John Beaudette, Inc. v. J.P. Noonan Transportation, Inc.*, 419 Mass. 311, 312-313, 644 N.E.2d 218, 219 (1995), (at a retail gasoline location with a long history of spills, including evidence of release of several gallons of oil with every gasoline delivery during the period from November 1987 through March 1988, sole evidence against defendant was a single spill onto station's pavement of between one to ten gallons of gas on one occasion).  Here, an eyewitness testified to releases prompting workers to "watch where they walked because there was [*sic*] lakes down there" and "all the oil that was in the basement, they used to dig ditches to divert the oil into like little ponds in the basement."  Lappies Deposition at 145, lines 10 through 18.

Mr. Lappies' testimony establishes that CONALCO for 9 years used the basement of the Premises as a disposal area to such an extent that pools—actual pools of dumped liquids—required ditching to divert the oil into other areas of the basement apart from the area immediately below the work area.  As the Court held in *Beaudette*: "The plaintiff is not required to pinpoint each cost which is attributable to a particular defendant's release, but instead is only required to prove that the defendant's release resulted in some response costs.  Once the plaintiff establishes that the release caused by the defendant resulted in response costs then the burden shifts to the defendant to prove what portion of the plaintiff's response costs are [*sic*] attributable to the release which the defendant

caused." 419 Mass. 311, 314-315, 644 N.E.2d 218, 220.  CONALCO does not deny the

releases it caused, and cannot deny the incurrence of response costs by Mr. Cariddi to

address the contamination in the basement of the Premises.  CONALCO's effort to avoid

liability by disingenuous disassociation of itself from the consequences of the very

releases it caused over nines years of oily operations is, regrettably, entirely consistent

with the sort of corporate citizenship evinced by its serial evasions, adopted as has served

its convenience, from the time Mr. Cariddi first asked CONALCO to assess and clean up

the mess it caused.

        For the reasons stated, Mr. Cariddi respectfully submits that CONALCO's

objections to the Chief Magistrate Judge's Recommendation should be rejected.


                                    The Plaintiff,
                                    James V. Cariddi
                                    By his attorneys:

Dated:  December 18, 2006           /s/ Christopher B. Myhrum

                                    Christopher B. Myhrum
                                    BBO No. 365980
                                    Bulkley, Richardson and Gelinas, LLP
                                    1500 Main Street - Suite 2700
                                    Springfield, MA 01115-5507
                                    Tel:  (413) 781-2820
                                    Fax:  (413) 272-6806



                        **CERTIFICATE OF SERVICE**

        I, Christopher B. Myhrum, hereby certify that this document(s) filed through the
ECF system will be sent electronically to the registered participants as identified on the
Notice of Electronic Filing (NEF).

                                    /s/ Christopher B. Myhrum
                                    Christopher B. Myhrum